COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Humphreys and Agee
Argued at Chesapeake, Virginia


KENNETH P. THOMPSON
                                                OPINION BY
v.    Record No. 0206-02-2        JUDGE ROBERT P. FRANK
                                              AUGUST 13, 2002
BRENCO, INC. AND
 LUMBERMEN'S MUTUAL CASUALTY COMPANY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          B. Mayes Marks, Jr. (Marks and Williams, on
          brief), for appellant.

          S. Vernon Priddy III (William B. Judkins;
          Sands Anderson Marks & Miller, on brief), for
          appellees.


     Kenneth P. Thompson (claimant) appeals from a decision of

the Workers' Compensation Commission (commission) denying

claimant's change of condition application.  On appeal, claimant

contends the commission erred in finding it did not have

jurisdiction over his claim and in finding his claim failed to

establish a causal connection between his original, compensated

injury and his new injury.  While we disagree with the

commission's finding regarding its jurisdiction, we affirm the

denial of benefits.

                         Background

     Claimant was an employee of Brenco, Inc. (employer).  He

injured his left hip and femoral shaft, his right forearm, his

head, and his left ear on December 13, 1995, when a ton of metal tubing fell on him at work. A Memorandum of Agreement between claimant and employer was filed with the commission on February 23, 1996; the commission approved the agreement and entered an award order in March 1996.

Claimant continued to have problems with his limbs, especially his left knee. His legs began to "give out" on him, although he usually could stop himself from falling to the ground. Claimant testified his legs "kept on giving out" after his 1996 surgeries; however, the medical records indicate claimant did not know when his legs began "giving out." The records indicate he was improving until he saw Dr. Gurpal Bhuller in December 1999 and had a "new problem" of his left knee "giving out." This visit is the first indication in the medical records that claimant's knee was "giving out" and causing him to fall. At the hearing, claimant remembered only one fall with any specificity, when he fell on his back at work and hit his head on the floor, sometime in December 1999.

Dr. Bhuller became suspicious that this problem "represent[ed] spinal cause or spinal pathology." Dr. Bhuller ordered an EMG study, which indicated "the possibility of cervical spinal stenosis." The doctor then ordered an MRI, which confirmed claimant had "a tight spinal stenosis."

-

Dr. Bhuller told claimant that the spinal stenosis might not be related to his 1995 injuries and later indicated to employer that the stenosis was not related to those earlier injuries.

Claimant was referred to a neurosurgeon and was examined by Dr. David Geckle.  Dr. Geckle reviewed the MRI and found "what look[ed] like a congenitally narrow lumbar canal with four shortened pedicles."  A CT scan showed "[c]ervical spondylosis at the C5-6 level with moderate foraminal stenosis."  In May 2000, Dr. Geckle performed a verebrectomy on claimant's neck "with autologous iliac crest graft fusion and planting" in hopes of correcting the problem.

Claimant filed a change of condition application with the commission on July 12, 2000.  Included in the filed documents was a typed questionnaire, signed by Dr. Geckle.  He marked "Yes" on the form, indicating claimant's "cervical problems" were "aggravated[d], accelerate[d], and/or exacerbate[d]" by the December 1995 accident, contributing to the need for the verebrectomy.  No explanation for this conclusion was provided.[1]

Employer asked several doctors to examine claimant's medical records.  Dr. Leonard Green, a neurologist, found no indication that claimant suffered a cervical injury in 1995 and concluded the condition was congenital.  He explained:

_____

[1] Nothing in the medical records suggests claimant's condition could be aggravated by his falls, although falls are considered a symptom of his condition.

-

The claimant's history of his cervical spinal problem is most consistent with natural progression related to ordinary "wear and tear" which almost always occurs with these spinal canal abnormalities. Consequently, it is clear and convincing that the claimant's cervical spinal canal problem was not causally related to the industrial accident of December 13, 1995.

Dr. Ralph Hagan, a neurologist, also reviewed claimant's records. He explained that claimant's problems were typical of patients with cervical spondylotic myelopathy. Dr. Hagan concluded:

As Dr. Bhuller stated in his letter of [February 1, 2000], this condition is not causally related to his worker's compensation injury of [December 13, 1995]. Certainly he would have had symptoms prior to December 1999 if this condition were related to his worker's compensation injury four years earlier.

The only witness at the hearing before the deputy commissioner was claimant. After the hearing, claimant was awarded $236.76 per week for temporary total disability. The deputy commissioner accepted Dr. Geckle's "opinion" that claimant's cervical condition was aggravated by the accident.

The full commission reversed this decision. First, the commission found it did not have jurisdiction over the case because the claim was based on a "compensable consequence of a compensable consequence," referring to Amoco Foam Prods. Co. v. Johnson, 257 Va. 29, 510 S.E.2d 443 (1999). The commission also

-

found the cervical condition was unrelated to the accident, accepting Drs. Bhuller's, Green's, and Hagan's opinions.

## Analysis

Claimant admits his cervical problems were not solely caused by the 1995 accident. He argues instead that the accident exacerbated a pre-existing, congenital condition and, therefore, is compensable. He also argues the commission had jurisdiction to consider his change of condition claim.

The commission had jurisdiction to consider this claim. The commission's only basis for rejecting jurisdiction was based on Amoco.[2] However, the Supreme Court did not address the issue of jurisdiction in that case. Rather, the Court examined the record and determined no "causal connection between the original injury and the November 1995 injury" was established. Id. at 33, 510 S.E.2d at 444. The analysis explained what a claimant must prove to receive an award, not what must be alleged before the commission can consider the merits. See id. Clearly, as the Supreme Court did examine the merits of the claim, Amoco does not limit the commission's jurisdiction.

The commission here found, in the alternative, that claimant had not established a causal connection between the

---

[2] The change of condition claim was timely filed under Code § 65.2-708, which allows review of awards within "twenty-four months from the last day for which compensation was paid." Compensation was last paid to claimant on November 1, 1998, and his change of condition claim was filed on July 12, 2000.

-

1995 incident and the cervical problems.  The record supports this finding.[3]

To receive an award, a claimant must prove his change of condition is causally related to the original occupational injury.  Commonwealth/Cent. Virginia Training Ctr. v. Cordle, 37 Va. App. 232, 237, 556 S.E.2d 64, 67 (2001).  The commission's ruling on causation is a factual finding, which we review with great deference to the commission.  Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 4-5, 526 S.E.2d 267, 268 (2000).

> "'[A] finding of fact made by the commission is conclusive and binding upon this court on review.' 'That contrary evidence may be in the record is of no consequence if there is credible evidence to support the commission's findings.'" Sneed v. Morengo, 19 Va. App. 199, 204, 450 S.E.2d 167, 171 (1994) (citations omitted).

Id. at 4, 526 S.E.2d at 268.

Claimant argues the accident exacerbated his pre-existing condition, not that the December 1995 accident directly caused the condition.  Aggravation of a pre-existing condition is compensable under the Workers' Compensation Act.  Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 231-32, 409 S.E.2d 824, 827 (1991).  Claimant concedes the treating physician, Dr. Geckle, provided the only testimony in support of his position that the

---

[3] As Amoco ultimately held the injury was not related to the workplace accident, the commission was correct that Amoco's analysis prevents an award in this case.  However, the issue is not jurisdictional, but instead is failure to prove an essential element of the claim.

-

accident aggravated his cervical condition.  However, examining the evidence in the light most favorable to the party prevailing before the commission, see id. at 229, 409 S.E.2d at 826, we find the commission had sufficient evidence to deny the request for benefits.

Dr. Geckle's only statement regarding causation was an "X" beside "Yes," in response to the written question, "In your opinion . . . did your patient's accident of December 13, 1995 and/or its sequellae aggravate, accelerate, and/or exacerbate your patient's cervical problems . . . ."  Nothing in his medical reports provides any support for this conclusion. Indeed, we are uncertain whether claimant believes the accident itself aggravated his condition or whether the injuries from the accident and their effects aggravated his cervical problem.[4]

While a treating physician's opinion normally is given great weight, see Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986), such an opinion is not conclusive, especially when the opinion is not accompanied by any reasoning or explanation.  Cf. Lanning v. Virginia Dep't of Transp., 37 Va. App. 701, 708-09, 561 S.E.2d 33, 36-37 (2002) (explaining that a "bald assertion" is not enough to prove causation nor are "talismanic words" necessary).  Here, while

---

[4] The commission found no connection existed between the accident and claimant's cervical problems.  Therefore, we need not address the issue of compensable consequences independently.

-

the doctor used the "talismanic words," he provided no explanation for his conclusion.

On the other hand, Dr. Bhuller, who also treated claimant, Dr. Green, and Dr. Hagan, all agreed the cervical condition was not related to the 1995 accident. While they did not explicitly address the issue of aggravation, they completely rejected any causal link between the injury and the accident. Dr. Bhuller called the failure of claimant's left knee a "new problem" in his medical report. Dr. Hagan concluded claimant "had two distinct problems," one caused by his accident and one caused by his spinal/cervical condition. Additionally, the explanations provided by Drs. Green and Hagan supported their conclusion. Both doctors noted that claimant's problems were related to a congenital disorder that appeared to develop along the typical course for such patients. Therefore, the doctors concluded the accident did not exacerbate the problem; it was progressing normally, as if the 1995 accident had not happened.

While the medical opinions conflicted, the commission was free to decide which evidence was more credible and should be weighed more heavily. See McPeek v. P. W. & W. Coal Co., Inc., 210 Va. 185, 188, 169 S.E.2d 443, 445 (1969); Georgia-Pacific Corp., 32 Va. App. at 5, 526 S.E.2d at 269. We do not find the commission abused its discretion when it declined to believe claimant's physician.

-

## Conclusion

Although the commission incorrectly found it did not have jurisdiction over this case, we affirm the commission's alternative finding that claimant failed to prove a causal link between his workplace accident and his cervical condition. We, therefore, affirm the commission's denial of benefits.

<u>Affirmed.</u>