COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Petty and Senior Judge Haley
Argued at Alexandria, Virginia

UNPUBLISHED

UNITED AIRLINES, INC.

                                               MEMORANDUM OPINION[*] BY

v.      Record No. 0556-13-4             JUDGE ROBERT P. FRANK
                                               NOVEMBER 19, 2013

HELEN A. SMOLAK

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

       Michael N. Salveson (G. Bethany Ingle; Littler Mendelson, P.C., on
       briefs), for appellant.

       Benjamin J. Trichilo (McCandlish Lillard, on brief), for appellee.

United Airlines, Inc. ("employer") appeals an order of the Workers' Compensation

Commission ("commission") finding Helen A. Smolak ("claimant") carried her burden of

proving that the requested knee replacement surgery was causally related to her compensable

injury. Although employer lists four assignments of error, all four essentially address the same

issue: whether credible evidence supports the commission's conclusion that the disputed knee

replacement surgery was reasonable, necessary,[1] and causally related to claimant's compensable

work accident. For the following reasons, we affirm.

BACKGROUND

Dr. Fleeter met claimant in 2005 when she sought a release to return to work after a

shoulder injury. In his 2005 report, Dr. Fleeter noted that claimant "stands and walks without a

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] At oral argument, employer conceded the surgery was reasonable and necessary but
continued to maintain no causation..

limp." Claimant suffered a fall at work on July 26, 2007. This resulted in the injury at issue, which was acknowledged by employer on September 20, 2007 to be a compensable injury. Dr. Fleeter treated claimant for that injury beginning on September 14, 2007, at which time Dr. Fleeter noted a limp and discomfort in claimant's knee. An x-ray revealed degenerative changes but no acute abnormality. On October 29, 2007, Dr. Fleeter observed that claimant limped and favored her right knee. He noted the fall as the cause of the injury, but he did not refer to the date of the fall. In January 2008, Dr. Fleeter recorded that claimant still had soreness in her right knee. On September 17, 2008, claimant returned to Dr. Fleeter complaining of continued discomfort in her right knee, which Dr. Fleeter diagnosed as osteoarthritis. Dr. Fleeter examined a May 2006 MRI of claimant's right knee. He observed that the MRI was consistent with "an old ACL tear." On November 11, 2009, Dr. Fleeter recommended knee replacement surgery. Claimant postponed the surgery in the hope that her injury would improve, but in February 2011, she was prepared to undergo total knee replacement surgery to address her constant pain and difficulty in standing. On March 30, 2011, Dr. Fleeter wrote a letter supporting the knee surgery.

In that letter, Dr. Fleeter referred to claimant's prior history of knee and shoulder injuries. However, he confused the 2007 injury with a 2003 shoulder injury. Dr. Fleeter referenced the "*nearly 8 years since the fall*" and noted that claimant's knee had "become progressively symptomatic." Dr. Fleeter concluded that claimant's "right knee injury *is a direct result of the fall in 2003*." Dr. Fleeter noted claimant, prior to the work-related injury, had only minimal degenerative arthritis and no complaints of pain prior to the fall.

Claimant contacted Dr. Fleeter regarding the error. Dr. Fleeter subsequently wrote a corrective letter distinguishing between the right shoulder injury that occurred on June 26, 2003 and the right knee injury that occurred on July 26, 2007. Dr. Fleeter stated that he had "confused

- 2 -

the dates of the injuries. There was no evidence of *any injury at any time* prior to July 26, 2007. Clearly there was no injury to her knee in June, 2003. This was my error and I apologize." (Emphasis added). Dr. Fleeter concluded the corrective letter by stating, "I hope this clears up any issues regarding her care. Specifically, she did not have evidence of arthritis or problems with her knee prior to the fall in 2007."

In his letter of March 30, 2011, Dr. Fleeter indicated he was aware of claimant's treatment with Dr. George Aguiar. He had reviewed the 2007 MRI, which revealed progressive arthritis of claimant's right knee with a possible ACL tear.

On December 15, 2009, Dr. Malek conducted an individual medical evaluation and diagnosed degenerative arthritis of both knees, although more severe on the right. While Dr. Malek suggested claimant may require a total knee arthroplasty, he concluded the arthritic changes in the knee pre-existed her work-related injury, thus concluding the knee replacement surgery was not causally related to the July 2007 injury.

On October 9, 2012, Dr. John P. McConnell examined claimant's right knee as part of an independent medical evaluation. Dr. McConnell specifically noted claimant "evidently had an arthroscopic procedure on her right knee," but indicated it was unclear when the surgery took place. Dr. McConnell noted claimant "is unclear concerning dates of her treatment and what treatment was done to her right knee." Dr. McConnell concluded that although claimant is a candidate for a total right knee replacement surgery, claimant's severe osteoarthritis was not related to the fall at work in 2007.

Employer introduced documentary evidence demonstrating claimant had been treated for pain in her right knee well before 2007. Although claimant denied knowledge of the earlier treatment in her testimony before the deputy commissioner, the records demonstrate that on March 23, 2001, Dr. Aguiar examined claimant in response to her complaint of right knee pain

- 3 -

beginning earlier that month. In June 2001, Dr. Aguiar diagnosed claimant with internal derangement of the right knee and a possible meniscus tear. Dr. Aguiar performed a right knee arthroscopic chondroplasty on September 10, 2002. When he examined her again nine days later, Dr. Aguiar reported that claimant "understands that, given the arthritic changes in her knee, she most likely will require a knee arthroplasty sometime in the distant future." Later that year, Dr. Aguiar noted claimant "will continue to have discomfort since she has obvious osteoarthritic early changes."

At the November 13, 2012 hearing before the deputy commissioner, claimant, the only witness to testify, stated that prior to the July 26, 2007 accident, she had "no problem with [her right knee] whatsoever." She testified her right knee progressively got worse following the work accident. Claimant denied having had knee surgery in 2002 and did not recall the extent of her treatment with Dr. Aguiar. She acknowledged she had never told Dr. Fleeter about her treatment with Dr. Aguiar, because she did not remember her treatment with him. She also denied ever having discussed pre-existing right knee arthritis with Dr. Fleeter.

In concluding that claimant carried her burden of proof, the deputy commissioner

> rel[ied] primarily upon Dr. Fleeter's reports, and note[d] that he is the claimant's primary treating physician and orthopedic surgeon. As such, his opinions are entitled to considerable weight, and [the deputy commissioner] therefore credit[ed] his opinion that the claimant's right knee injury and the need for knee replacement surgery is a direct result of the July 26, 2007, injury by accident. [Deputy commissioner] recognize[d] and respect[ed] the contrary opinions offered by Dr. McConnell and Dr. Malek, but [gave] controlling weight to the opinions of the claimant's primary treating physician, Dr. Fleeter.

The full commission agreed with the deputy commissioner and deferred to his credibility findings and thus affirmed the deputy commissioner's decision.

This appeal follows

- 4 -

ANALYSIS

Employer assigns error to the commission's reliance on Dr. Fleeter's causation opinion. Specifically, employer maintains that Dr. Fleeter's conclusion should not have been considered at all, because no credible evidence supports his opinion that the need for replacement surgery flows from the July 26, 2007 injury. Instead, employer argues the opinions of Drs. Aguiar, Malek, and McConnell are controlling.

We have consistently held that "[i]t is the claimant's burden to demonstrate that the treatment for which he seeks payment is causally related to the accident, is necessary for treatment of his compensable injury, and is recommended by an authorized treating physician." Portsmouth Sch. Bd. v. Harris, 58 Va. App. 556, 563, 712 S.E.2d 23, 26 (2011) (citing Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 199-200, 336 S.E.2d 903, 906 (1985)).

"Causation of a medical condition may be proved by either direct or circumstantial evidence, including medical evidence or 'the testimony of a claimant.'" Farmington Country Club v. Marshall, 47 Va. App. 15, 26, 622 S.E.2d 233, 239 (2005) (quoting Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996)). "The commission's determination regarding causation is a finding of fact." Id. "Thus, unless we can say as a matter of law that claimant failed to sustain her burden of proving causation, the commission's findings are binding and conclusive upon us." Id. at 27, 622 S.E.2d at 239.

We recognize that "'[t]hough not necessarily conclusive, the opinion of the treating physician[2] is entitled to great weight.'" Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 753 n.4, 601 S.E.2d 693, 698 n.4 (2004) (quoting H.J. Holz & Son, Inc. v. Dumas-Thayer, 37 Va. App. 645, 655, 561 S.E.2d 6, 11 (2002)). However, "[w]henever a physician's diagnosis flows from an assumption that rests upon a faulty premise, *such as misinformation provided by a*

---

[2] It is uncontested that Dr. Fleeter was claimant's treating physician.

*claimant*, the commission may refuse, and often will be required to refuse, to attribute any weight to that opinion." Sneed v. Morengo, Inc., 19 Va. App. 199, 205, 450 S.E.2d 167, 171 (1994) (emphasis added). Indeed, under such circumstances, "the [c]ommission err[s] in attributing any weight to it." Clinchfield Coal Co. v. Bowman, 229 Va. 249, 252, 329 S.E.2d 15, 16 (1985). In addition, as we noted in Thompson v. Brenco, Inc., 38 Va. App. 617, 623, 567 S.E.2d 580, 583 (2002), "a treating physician's opinion . . . is not conclusive, especially when the opinion is not accompanied by any reasoning or explanation."

Employer's entire argument is premised on whether Dr. Fleeter's opinion was based on a faulty premise, i.e. that claimant suffered no right knee problems prior to the work-related knee injury. Employer asserts that Dr. Fleeter did not have a complete or accurate medical history of claimant's pre-existing right knee condition.

However, the record reflects Dr. Fleeter was aware of claimant's previous knee condition. He began treating claimant in 2005, when she had no limp, and continued to treat her through 2011, when he recommended the surgery in question. Dr. Fleeter observed claimant only had minimal degenerative arthritis and no complaints of pain prior to the work-related fall.

Dr. Fleeter's 2011 letter stated, "Prior to the injury, [Smolak] did not have significant complaints related to her shoulders or right knee. She had been treated by *several physicians previously* with ongoing complaints of the shoulder and knee pain. *She saw Dr. Aguiar*, Dr. Patel and physicians through the workman's compensation clinic." (Emphasis added). Further, Dr. Fleeter recorded on September 14, 2007 that claimant had "a history of a right knee injury" and that "*[p]ast medical history, surgical history*[, etc.] were reviewed with the patient and are recorded in the chart, and *are non-contributory to today's problem*." (Emphasis added). Further, Dr. Fleeter had reviewed the 2007 MRI.

The record contains sufficient evidence for the commission to find that Dr. Fleeter had adequate knowledge of the history of claimant's knee to render a medical opinion worthy of controlling weight.[3]

Employer points to inconsistencies in Dr. Fleeter's opinion as evidence that Dr. Fleeter's opinion is unworthy of belief. However, it is not this Court's function to evaluate conflicting evidence in the record. "Questions raised by conflicting medical opinions must be decided by the commission." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986). "It is not our function, but the [c]ommission's, to weigh conflicting evidence, and when there is credible evidence to support the [c]ommission's findings, we are bound thereby." Chandler v. Schmidt Baking Co., Inc., 228 Va. 265, 268, 321 S.E.2d 296, 298 (1984). In this case, the commission resolved the inconsistencies in favor of claimant. We may not and will not disturb those findings.

Employer further challenges the commission's finding that claimant's testimony was credible and worthy of belief. "Traditional principles dictate, both in the civil and criminal law, that the determination of a witness' credibility is within the fact finder's exclusive purview because he has the best opportunity to observe the appearance and demeanor of the witness." Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 381, 363 S.E.2d 433, 437 (1987) (citations omitted). This Court "'does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses.'" Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 102, 608 S.E.2d 512, 526 (2005) (quoting Wagner

---

[3] The fact that claimant had a history of prior knee problems has no bearing on the compensability of the needed surgery if the fall exacerbated the existing condition. Where an employee's pre-existing condition is aggravated or accelerated by a work-related injury, the resulting disability is covered under the Workers' Compensation Act. Olsten of Richmond v. Leftwich, 230 Va. 317, 319-20, 336 S.E.2d 893, 895 (1985). Claimant's persistent and increasing knee pain after the 2007 fall, after four years of no knee treatment, supports Dr. Fleeter's diagnosis that the needed surgery is causally related to the 2007 fall.

Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)). Instead, our duty is to determine whether there is credible evidence to support the commission's finding, and if there is, to sustain that finding. Celanese Fibers Co. v. Johnson, 229 Va. 117, 121, 326 S.E.2d 687, 690 (1985).

Applying these principles to the case before us, we cannot say that the commission erred in finding claimant to be credible. The deputy commissioner explicitly found claimant's testimony to be credible. The full commission agreed. We hold that there is evidence in the record to support the commission's finding.

CONCLUSION

The deputy commissioner had at his disposal the live testimony of claimant and the written medical reports of Drs. Aguiar and Fleeter. The deputy commissioner weighed the credibility of the witness, including the inconsistencies and discrepancies in the testimony, and found that claimant had met her burden to show that the right knee surgery was causally related to the July 26, 2007 injury. The full commission found sufficient credible evidence to support the deputy commissioner's findings. Likewise, this Court finds sufficient credible evidence in the record to support the full commission's findings.

Affirmed.

Haley, J., dissenting.

I respectfully dissent. I would hold that the commission's finding that the proposed knee replacement surgery is causally related to the 2007 injury is not supported by credible, competent evidence. I would, therefore, reverse the commission's decision.

Dr. Fleeter's opinion that the recommended surgery was a direct consequence of the original workplace accident was based upon the faulty premise that claimant's knee condition did not pre-exist the workplace accident. Therefore, the commission erred by relying on the treating physician's opinion. See Clinchfield Coal Co. v. Bowman, 229 Va. 249, 252, 329 S.E.2d 15, 16 (1985). The misinformation provided by claimant to her treating physician necessarily impaired his reasoning. Dr. Fleeter was unaware, according to claimant's own testimony, of right knee problems prior to the incident of 2007. Nonetheless, the deputy commissioner found Dr. Fleeter's opinion, as the treating physician, sufficed to establish the causal connection between the 2007 incident and the proposed knee replacement surgery. The full commission affirmed, with one commissioner dissenting.

"Although the findings of the . . . [c]ommission, if based on credible evidence, are conclusive and binding upon us, the [c]ommission's findings of fact are not binding upon us when there is no credible evidence to support them. The question of sufficiency of the evidence then becomes one of law." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986); see also Hercules v. Gunther, 13 Va. App. 357, 361, 412 S.E.2d 185, 187 (1999) ("Whether credible evidence exists to support a factual finding is a question of law which is properly reviewable on appeal."). The commission's decision must be based upon evidence that is both credible and competent, and this Court may properly review *de novo* the credibility and competence of that evidence.

Dr. Fleeter's conclusions were based on the premise that claimant's knee problems began only after she experienced the workplace accident. However, the record before the commission clearly established that not only had claimant complained of knee problems beginning many years before the July 26, 2007 accident, but also that she underwent knee surgery in 2002 after having been diagnosed with osteoarthritis and advised that she would likely require a knee arthroplasty in the future due to the arthritic changes in her knee. Dr. Fleeter's opinions failed to consider claimant's pre-existing condition or the earlier treatments.

Dr. Fleeter's opinion is further undermined by its inherent inconsistencies. Dr. Fleeter's own records reflect he examined an MRI from before the accident that revealed "an old ACL tear." However, in his opinion letter he indicates claimant "did not have evidence of arthritis or problems with her knee prior to the fall in 2007." This inconsistency is stark. If Dr. Fleeter's opinion is properly discounted, the only medical evidence in the record is that the proposed knee replacement surgery is *not* causally related to the 2007 incident.

"[I]t is our duty to determine whether credible evidence supports the [c]ommission's finding . . . ." Cook v. City of Waynesboro, 225 Va. 23, 31, 300 S.E.2d 746, 750 (1983) (citations omitted). "It is not our function, but the [c]ommission's, to weigh conflicting evidence . . . ." Chandler v. Schmidt Baking Co., Inc., 228 Va. 265, 268, 321 S.E.2d 296, 298 (1984). However, only "a decision supported by credible evidence . . . [is] conclusive and binding upon us." Barnes v. Wise Fashions, 16 Va. App. 108, 111, 428 S.E.2d 301, 303 (1993). As in Clinchfield, the basis for Dr. Fleeter's opinion "was the incomplete information furnished by" claimant. Clinchfield, 229 Va. at 252, 329 S.E.2d at 16. Moreover, here that information was not just incomplete; it was affirmatively misrepresented. The commission errs "in attributing weight to medical evidence based upon a faulty premise." Howell Metal Co. v. Adams, 35

- 10 -

Va. App. 184, 187-88, 543 S.E.2d 629, 631 (2001). Because the commission's finding is not supported by credible, competent evidence, I would reverse the decision of the commission.