COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, Atlee and Senior Judge Clements
Argued by videoconference


ALBA S. GARCIA

                                             MEMORANDUM OPINION* BY
v.      Record No. 1248-21-4                 JUDGE JEAN HARRISON CLEMENTS
                                             MAY 24, 2022
FAIRFAX COUNTY PUBLIC SCHOOLS


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Benjamin J. Trichilo (McCandlish Lillard, on briefs), for appellant.

        Danielle A. Takacs (Lynn McHale Fitzpatrick; Franklin & Prokopik,
        P.C., on brief), for appellee.


        Alba Garcia (claimant) appeals a decision of the Workers' Compensation Commission

denying her claim for permanent total disability benefits.  Claimant argues that the

Commission's decision was unsupported by the record, applied an erroneous and unprecedented

legal standard, failed to follow precedent, and "created a new statute of limitations."  She further

argues that the Commission unreasonably disregarded the credible testimony of her daughters

and attending orthopedist in favor of the opinions of physicians who never examined her injured

leg.  For the following reasons, we affirm the Commission's denial of permanent benefits.

                                      BACKGROUND

        "On appeal from a decision of the Workers' Compensation Commission, the evidence

and all reasonable inferences that may be drawn from that evidence are viewed in the light most

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

favorable to the party prevailing below." *Anderson v. Anderson*, 65 Va. App. 354, 361 (2015) (quoting *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83 (2005) (*en banc*)).

Claimant suffered a compensable injury to her right knee on November 16, 2012. On August 22, 2013, the Commission awarded claimant medical benefits and continuing temporary total disability benefits beginning November 17, 2012.

On April 2, 2020, claimant filed a claim seeking permanent and total disability benefits on the ground that she had suffered permanent loss to her left knee as a "compensable consequence of her work-related right leg injury." At a hearing on the claim for permanent and total disability benefits, the evidence demonstrated that claimant first reported left knee pain on July 10, 2015, to her orthopedist, Dr. Salter. Dr. Salter noted that claimant's left knee had full range of motion with no effusion but had diffuse tenderness. At that time, Dr. Salter recommended that claimant see her primary care provider for her left knee pain and concluded that the symptoms were not causally related to the November 16, 2012 injury.

Claimant's medical records did not mention left knee pain again until March 27, 2020, when she told Dr. Salter that pain had developed in the left leg "throughout the years" because she had been fully weightbearing on her left leg since November 2012. Claimant was wearing a pain patch on her left knee at the time of the examination. Dr. Salter found that claimant's left knee suffered from "overuse exacerbation" that was directly related to the November 16, 2012 right knee injury. Dr. Salter concluded that claimant had a 100% impairment rating in her right knee and a 7% impairment rating in her left knee, had reached maximum medical improvement in both knees, and was "not fit for any type of work." Dr. Salter also noted left knee pain during claimant's appointments on August 6, 2020, January 8, 2021, and February 8, 2021.

On September 9, 2020, and November 6, 2020, claimant reported left knee pain and that her left knee was "giving out" to Dr. Clop, her pain management provider. Dr. Clop noted that

claimant reported worsening bilateral knee pain and indicated that symptoms began "years ago." Dr. Clop did not perform a permanent partial disability rating on claimant and did not treat her left leg. Dr. Clop testified that claimant could dress, bathe, prepare simple meals, and work at a desk job despite her physical restrictions and limited mobility.

Dr. Clop did not believe that claimant's left leg pain was related to weightbearing from the right leg injury because claimant stated—and her daughters confirmed—that she does not perform any activities or "go anywhere or walk at all." Dr. Clop noted that claimant's weightbearing on her left leg would increase the risk of pain and progressive age-related changes, but such pain should be minimal because of her use of crutches and lack of activity. Dr. Clop denied that claimant was at maximum medical improvement because she was still awaiting some ketamine treatments that could improve her pain.[1]

In October 2020, Dr. Jeffrey Berg conducted an independent medical examination on both of claimant's knees. Dr. Berg determined that claimant's left knee symptoms were not causally related to the November 16, 2012 injury because there was no mention of left knee treatment until 2020. Dr. Berg noted that no radiographic findings in her left knee explained the severity of her complaints. Dr. Berg opined that claimant could perform sedentary work, although there may be some restrictions. Although no further orthopedic treatments could be provided to claimant, she was not yet at maximum medical improvement if the ketamine infusions provided any status improvement. Dr. Berg noted, however, that if no further pain

---

[1] Dr. Clop referred claimant for a neuropsychological evaluation to determine if any major psychopathology interfered with her ability to benefit from pain management therapies. Claimant ultimately demonstrated borderline impaired intellectual and memory abilities and fell within the range for dementia. The evaluator found no evidence of major psychopathology, including major depression, chemical dependence, or panic/anxiety disorder. The evaluator also found that claimant passed the malingering tests and found that she put forth a reasonably good effort during testing.

management treatments were available, claimant would be at maximum medical improvement. Dr. Berg opined that if claimant were at maximum medical improvement, her right knee would be at 59% permanent impairment; he did not assess the left knee because he concluded that any injury to it was not causally related to the November 16, 2012 accident and there had been no evaluation or treatment of the left knee. Dr. Berg also disagreed with Dr. Salter's impairment ratings.

Claimant's daughters, Roxanna and Whitney, lived with claimant their entire lives. Roxanna took claimant to her appointments and cared for claimant and the household. Both daughters testified that since claimant's accident, claimant had been in constant pain, was unable to straighten her leg, and "mostly [laid] down with her leg elevated." Claimant used crutches to walk, and Roxanna helped claimant "get ready" each morning. Both daughters stated that claimant had experienced problems with her left leg for about four or five years because it was very weak, and claimant has almost fallen. Claimant also used Lidocaine pain patches on both legs, including during visits with Dr. Salter and Dr. Clop. Roxanna testified that her mother frequently complained of left leg pain, but Dr. Salter and Dr. Clop ignored her complaints and focused on the right knee.

Claimant testified that since the accident, she had been unable to use or move her right knee. Her right knee pain was relieved by sitting or lying down. Some pain treatments, including Tramadol and pain patches, afforded some relief but they did not eliminate her constant pain. Claimant stated that her daughters helped her get out of bed and go to the bathroom. Claimant was unable to walk without crutches, and her left knee "fail[ed] a lot" and caused her pain because she had to support herself on her left knee. Claimant's left leg pain began approximately four or five years earlier as her knee deteriorated with increased use.

- 4 -

At the conclusion of the hearing, the deputy commissioner found that claimant's left knee injury was a compensable consequence of the November 16, 2012 injury and that claimant had reached maximum medical improvement in both legs. The deputy commissioner also found that claimant was entitled to permanent and total disability benefits because both legs carried a quantifiable disability rating and she was unable to use both legs in gainful employment.

On review, the Commission reversed and vacated the deputy commissioner's opinion and award. The Commission found that the evidence failed to establish that claimant's left knee injury was a compensable consequence of her November 16, 2012 accident. The Commission considered claimant's and her daughters' testimony and found that it was insufficient to overcome the lack of persuasive medical evidence. The Commission was unpersuaded by Dr. Salter's opinion, finding that when claimant complained of left knee pain two years after the accident, Dr. Salter determined that it was "not causally related to the 11/16/12 injury." The Commission emphasized that appellant did not report any additional left knee pain until March 2020. Accordingly, the Commission relied on Dr. Clop's and Dr. Berg's opinions that claimant's left knee pain was not causally related to the primary accident to conclude that claimant had failed to meet her burden of proving that she suffered a compensable consequence. This appeal follows.

## STANDARD OF REVIEW

Decisions of the Commission "shall be conclusive and binding as to all questions of fact." Code § 65.2-706(A). "Consequently, on appeal, 'we do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.'" *Jeffreys v. Uninsured Employer's Fund*, 297 Va. 82, 87 (2019) (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)). Instead, "we are bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind

- 5 -

*could* conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." *Artis*, 45 Va. App. at 83-84 (quoting *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222 (1988)). "'The scope of a judicial review of the fact finding function of a workers' compensation commission . . . is "severely limited, partly in deference to the agency's expertise in a specialized field."'" *Roske v. Culbertson Co.*, 62 Va. App. 512, 517 (2013) (quoting *Southside Va. Training Ctr. v. Ellis*, 33 Va. App. 824, 828 (2000)). Conversely, "the [C]ommission's legal determinations are not binding on appeal and will be reviewed *de novo*." *Id.* (quoting *Wainwright v. Newport News Shipbuilding & Dry Dock Co.*, 50 Va. App. 421, 430 (2007)).

ANALYSIS

A. The Commission did not apply an "erroneous and unprecedented legal standard" or "create a new statute of limitations."

Claimant argues that the Commission erred by failing to apply Code § 65.2-708(A)'s limitations period when it denied benefits for a causally related compensable consequence. She argues that "[t]he *sole basis* for denial of the claim, and rejection of Dr. Salter's findings was that the March 27, 2020 report was not rendered '*soon enough*,' . . . even though the claim was filed within the statute of limitations." (Emphasis added). Thus, she maintains that the Commission applied an unprecedented "soon enough" legal standard and created a new statute of limitations. We disagree.

"The doctrine of compensable consequences allows a claimant to recover for injuries that result from an industrial accident even if those injuries do not manifest during the initial industrial accident, but rather, develop at some point in the future." *Anderson*, 65 Va. App. at 363 (citing *Berglund Chevrolet, Inc. v. Landrum*, 43 Va. App. 742, 751 (2004)). "When the primary injury is shown to have arisen out of and in the course of employment, every natural

- 6 -

consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct." *Farmington Country Club, Inc. v. Marshall*, 47 Va. App. 15, 22 (2005) (quoting *Imperial Trash Serv. v. Dotson*, 18 Va. App. 600, 606-07 (1994)). "The issue in cases involving the range of compensable consequences flowing from the primary injury is essentially one of whether the medical evidence proves a causal connection between the primary injury and the subsequent occurrence." *Williams Industries, Inc. v. Wagoner*, 24 Va. App. 181, 188 (1997). Importantly, the claimant has the "burden of proving causation." *Farmington*, 47 Va. App. at 27 (citing *Marcus v. Arlington Cnty. Bd. of Supvrs.*, 15 Va. App. 544, 551 (1993)).

The record does not support claimant's argument that the Commission denied her claim for benefits because she failed to report her symptoms "soon enough" or because it found the claim untimely. To the contrary, the Commission held that claimant had failed to satisfy her burden of showing that her "left knee/left leg injury [w]as a compensable consequence of her work accident." The Commission reached that conclusion after considering the thirty-three months that elapsed between the primary accident and claimant's "isolated complaint of [left] knee pain in 2015" and the intervening years until claimant reported her left knee pain to Dr. Salter in March 2020. Indeed, the Commission's opinion does not even mention Code § 65.2-708(A)'s limitations period and did not hold that claimant had not reported her symptoms "soon enough." Accordingly, the Commission neither applied "an erroneous and unprecedented legal standard" nor created "a new statute of limitations."

B. The record supports the Commission's finding that claimant failed to prove causation.

Claimant argues that the Commission erred by finding that she failed to prove that her left knee injury was a compensable consequence of her November 16, 2012 injury. She contends that the Commission erroneously disregarded Dr. Salter's clear, unequivocal, and corroborated

findings in favor of the opinions of Drs. Clop and Berg, who never examined claimant's left leg. She asserts that Dr. Clop's and Dr. Berg's findings are unreliable and lack probative value because their opinions were based upon an incomplete and inaccurate medical history and rested upon flawed and erroneous facts. In addition, she contends that the Commission unreasonably disregarded uncontroverted, uncontradicted, and credible causation testimony of claimant and her two daughters without making any adverse credibility findings.

The Commission's "determination regarding causation [in a compensable consequence claim] is a finding of fact." *Farmington*, 47 Va. App. at 26 (citing *Marcus*, 15 Va. App. at 551). "[F]actual findings of the [C]ommission will not be disturbed if based on credible evidence." *Hess v. Virginia State Police*, 68 Va. App. 190, 194 (2017) (quoting *Anthony v. Fairfax Cnty. Dep't of Fam. Servs.*, 36 Va. App. 98, 103 (2001)). In determining whether credible evidence exists to support the Commission's findings of fact, "the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." *Pruden v. Plasser Am. Corp.*, 45 Va. App. 566, 574-75 (2005) (quoting *Wagner Enter., Inc. v. Brooks*, 12 Va. App. 890, 894 (1991)).

"Causation of a medical condition may be proved by either direct or circumstantial evidence, including medical evidence or 'the testimony of a claimant.'" *Farmington*, 47 Va. App. at 26 (citing *Dollar Gen. Store v. Cridlin*, 22 Va. App. 171, 176 (1996)). "The opinion of the treating physician is entitled to great weight, although the [C]ommission is not required to accept it[.]" *Vital Link, Inc. v. Hope*, 69 Va. App. 43, 64 (2018) (last alteration in original) (quoting *United Airlines, Inc. v. Hayes*, 58 Va. App. 220, 238 (2011)). Indeed, "such an opinion is not conclusive, especially when the opinion is not accompanied by any reasoning or explanation." *Thompson v. Brenco, Inc.*, 38 Va. App. 617, 623 (2002). "If there is any doubt in the treating physician's opinion, or if there is contrary expert medical opinion, 'the

- 8 -

[C]ommission is free to adopt that which is most consistent with reason and justice.'" *United Airlines, Inc. v. Sabol*, 47 Va. App. 495, 501-02 (2006) (quoting *Williams v. Fuqua*, 199 Va. 709, 714 (1958)). Thus, where medical opinions conflict, "the [C]ommission [is] free to decide which evidence [is] more credible and should be weighed more heavily." *Thompson*, 38 Va. App. at 624.

The record supports the Commission's determination that claimant failed to prove that her left knee injury was a compensable consequence of the right knee injury. The record established that claimant first reported left knee pain in 2015, thirty-three months after the primary accident. At that time, Dr. Salter advised her to treat with her primary care provider because the reported symptoms were "not causally related to the 11/16/12 injury." Claimant's medical records contain no further mention of left knee pain until March 2020. Although Dr. Salter found that claimant had "overuse exacerbation" and directly related the left knee pain to the November 16, 2012 right knee injury, Dr. Clop, appellant's pain management provider, disagreed. Specifically, Dr. Clop opined that claimant's left leg pain was not caused by weightbearing from the right leg injury because claimant stated that she does not perform any activities, go anywhere, or walk at all, and her daughters confirmed that account. Dr. Clop also denied that claimant was at maximum medical improvement because she was still awaiting some ketamine treatments that could improve her pain.

After conducting an independent medical examination, Dr. Berg also concluded that claimant's left knee pain was not causally related to the primary injury, explaining that there were no radiographic findings in her left knee that explained the severity of her complaints. Dr. Berg also emphasized that despite claimant's assertion that the left knee pain had developed over the years, her medical records contain no mention of left knee treatment until 2020.

Additionally, although claimant argues that, as the treating physician, Dr. Salter's opinion should have been afforded greater weight and that Drs. Clop and Berg are unreliable and their opinions lacked probative value, "[t]he Commission [is] free to decide which evidence [is] more credible and should be weighed more heavily." *Thompson*, 38 Va. App. at 624. The Commission found that the medical evidence supported Dr. Clop's and Dr. Berg's assessments, not Dr. Salter's. Because Dr. Clop's and Dr. Berg's expert opinions are different than Dr. Salter's, "the [C]ommission [was] free to adopt that which is most consistent with reason and justice." *Sabol*, 47 Va. App. at 501-02 (quoting *Williams*, 199 Va. at 714).

It is also clear from the record that the Commission considered claimant's testimony and that of her daughters. The Commission noted their testimony that claimant's left knee pain had progressed during the preceding four to five years, that claimant routinely used pain patches on her left knee, and all attributed her left knee condition to undue weightbearing on her left leg as a consequence of the right knee injury. The Commission did "not find the testimony sufficient to overcome the lack of persuasive medical evidence to support a conclusion that the claimant suffered a compensable consequence to her left knee/leg in this particular case." Notwithstanding claimant's argument that the Commission arbitrarily disregarded the testimony that tended to support her claim, the Commission expressly noted that the testimony did not persuasively explain why Dr. Salter would have ignored claimant's left knee pain complaints for nearly five years. We do not "review the weight, preponderance of the evidence, or the credibility of witnesses." *Jeffreys*, 297 Va. at 87 (quoting *Caskey*, 225 Va. at 411). The Commission acted within its role as fact finder when it weighed claimant's and her daughters' testimony against the medical evidence. In sum, credible evidence supports the Commission's conclusion that claimant did not prove her left knee injury was a compensable consequence, and we do not accept her invitation to reweigh the evidence to reach the opposite conclusion.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Commission.

*Affirmed.*