COURT OF APPEALS OF VIRGINIA

Present: Judges Fulton, Ortiz and Lorish
Argued at Norfolk, Virginia


ANGELA WATFORD

MEMORANDUM OPINION[*] BY
v.        Record No. 0563-24-1          JUDGE DANIEL E. ORTIZ
JULY 29, 2025

CITY OF NEWPORT NEWS


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Ashlee R. Ferebee (Morring Law, PLLC, on briefs), for appellant.

Philip L. Bradfield, Senior Assistant City Attorney (Adonica Baine,
Deputy City Attorney, on brief), for appellee.


Angela Watford inhaled construction odors at her place of work and subsequently

suffered a prolonged illness. She filed a claim with the Workers' Compensation Commission

based on the incident but the deputy commissioner and, subsequently, the full Commission

denied her request. She now appeals, assigning error to the Commission's finding that she failed

to prove a compensable injury by accident, and to several of the Commission's evidentiary

decisions. Finding no error, we affirm.

BACKGROUND[1]

Watford is a Senior Inspector for Property Maintenance for the City of Newport News.

On April 21, 2022, she went to her office at 8:00 a.m., where she smelled "fumes" like turpentine

or gasoline. Work was being done on the building's roof that day, the odor of which was

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] On appeal we view the evidence in the light most favorable to the City, the prevailing
party before the Commission. *Berglund Chevrolet, Inc. v. Landrum*, 43 Va. App. 742, 746
(2004).

circulated through the HVAC system. By 10:00 a.m. when Watford was scheduled to conduct an interview, she had lost her voice, become nauseous, developed a headache, and "just felt sick." As the day went on, "everyone was opening up their doors, putting fans up" to dispel the fumes, and "[o]ther departments left the building." Watford "tr[ied] to fight through the day" and remained in the office building, despite her symptoms, because she had other interviews.

That night, Watford went home, got straight in bed and "did not get up." She "had a terrible cough," was shaking, had chills and a fever, and no appetite. She did not return to work the next day (a Friday) and "stayed in bed the whole weekend." Watford testified that none of her symptoms began before she went in to work on April 21 and that before the incident, she never had any breathing issues.

On the following Monday, Watford saw her physician, Dr. Samuel Jones, because she "was not getting any better." Dr. Jones's report from that visit did not include a diagnosis, but it noted that Watford "state[d] she inhaled a strong chemical at work." Watford began throwing up after returning home, so she went to the emergency room. At the emergency room, she was diagnosed with "Pneumonia . . . due to infectious organism." Both Dr. Jones and the ER physician prescribed Watford antibiotics, and she reported feeling better after taking them. Watford remained absent from work for 10 or 12 days following the onset of her illness. She smelled the fumes again on June 7 and 10 and left the office immediately each day. She did not develop symptoms upon either of these occasions.

Dr. Jones referred Watford to Dr. Subramanian Malaisamy, a pulmonologist. Dr. Malaisamy's notes stated Watford's symptoms "appear[ed] to be acute pneumonitis/pneumonia." He ordered a follow-up CT scan and prescribed an albuterol inhaler.

Shortly after she saw Dr. Malaisamy, Watford filed an injury report form outlining the incident and her subsequent illness as well as a workers' compensation form, which allowed her

to choose an "authorized treating physician[]" from a list of "four or five."  Watford chose Dr. Roxanne Dietzler.  Dr. Dietzler initially diagnosed Watford with "chemical asthma exacerbation" in June.  Dr. Dietzler's notes indicate that she spoke with Dr. Malaisamy in August and that he stated Watford's symptoms were not indicative of a chemical inhalation injury.  Although Watford has otherwise recovered, she now suffers from asthma, which she "never had . . . prior to this incident."

PROCEDURAL HISTORY

In her pre-hearing statement before the Workers' Compensation Commission, Watford alleged injury by accident to her "respiratory system/lungs" because of the fumes she smelled at work.  The deputy commissioner presided over an evidentiary hearing on her claims between June 7, 2023, and September 6, 2023.

The deputy commissioner heard testimony from Watford and her coworkers about her experience on April 21.  He also reviewed medical evidence from Drs. Dietzler, Malaisamy, and Jones.[2]  Dr. Dietzler submitted a formal opinion, in which she opined that, based on the medical records available, Watford "had pneumonia, most likely due to an infectious process."  She stated, in part, that Watford's symptoms "were consistent with an infectious etiology" and that had she suffered an inhalation injury, her symptoms would have improved "when the irritant [was] removed or when [she was] introduced to fresh air.  Nausea and vomiting generally occur at the onset of the inhalation injury and not days later."  She stated further that Watford's symptoms and chest x-rays were more consistent with a viral infection.  Although there is some overlap in symptoms, she stated that an inhalation injury appears more "allergic in nature" and symptoms include "runny nose, cough, sore throat, hoarseness, etc."  Finally, she noted that the

---

[2] Dr. Malaisamy did not submit a formal opinion; the Commission reviewed his treatment notes and found that he "did not directly provide his opinion on the causal relationship between her diagnosed condition and her exposure on April 21, 2022."

resolution of Watford's symptoms after a course of antibiotics was consistent with infectious pneumonia.[3]

Dr. Jones submitted an unsigned questionnaire opinion (drafted by Watford), which asked: "Based on the history of these symptoms, would you then agree that the chemical exposure is causally related to Ms. Watford's current diagnosis," to which he checked "Yes." The Workers' Compensation Commission also requested an "Attending Physician's Report" from Dr. Jones. One box on the report asked, "Is the diagnosed condition related to the on-the-job injury," and Dr. Jones checked "Unknown." Dr. Jones gave no explanation for his opinion in either questionnaire.

The deputy commissioner ultimately found that Watford "did not prove that she suffered a condition compensable under the Virginia Workers' Compensation Act ('Act')." He noted that the testimony of Drs. Dietzler and Malaisamy were more persuasive than Dr. Jones's, and "the persuasive medical evidence associate[d] [Watford's] symptoms with infectious pneumonia rather than inflammatory pneumonitis as a result of her chemical exposure."[4] By contrast, the deputy commissioner found Dr. Jones's testimony was contradictory, as one report diagnosed Watford with "chemical asthma exacerbation" and another "indicated that [Jones] did not know whether Watford's condition was related to her work." He ultimately found Watford failed to "provide sufficient proof" of a compensable injury by accident and denied her application for workers' compensation.

---

[3] Dr. Dietzler responded to a second questionnaire as well, in which she restated her original opinion and findings and further distinguished Watford's symptoms from those of an inhalation injury.

[4] Upon the employer's request, the deputy commissioner rescinded and re-published his opinion to correct a scrivener's error improperly attributing Dr. Dietzler's opinion to Dr. Malaisamy. The opinion is otherwise largely unchanged.

Watford appealed to the full Commission, which affirmed the deputy commissioner's decision. Although it declined to disturb the deputy commissioner's finding that Watford's testimony was credible, it found her evidence insufficient to show that her symptoms and pneumonia diagnosis were causally related to the odor. Instead, it found that Dr. Dietzler's detailed opinions showed Watford's condition was caused by infection, not chemical inhalation. It also found Dr. Jones's questionnaires unpersuasive and noted that his contradictory responses were "especially problematic." The Commission ultimately found that Watford failed to establish a causal relationship between her illness and the odors at work and therefore failed to prove she suffered a compensable injury by accident. Watford timely appealed.

ANALYSIS

Watford's five assignments of error are best dealt with in two categories. We must decide, first, whether the Commission erred in finding that she failed to prove a compensable injury under the Workers' Compensation Act, and second, whether the Commission erred by putting little weight in Watford's evidence. Finding no error in either category, we affirm.

I. The Commission did not err in finding that Watford failed to prove she suffered a compensable injury by accident.

To demonstrate a compensable injury by accident, Watford was required to prove that she suffered: "(1) an identifiable incident; (2) that occur[ed] at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change." *Hoffman v. Carter*, 50 Va. App. 199, 212 (2007) (quoting *Chesterfield County v. Dunn*, 9 Va. App. 475, 476 (1990)). The deputy commissioner and the Commission both found that she failed to establish a causal connection between her

symptoms and the workplace odor, and therefore failed to prove a compensable injury by accident.[5]  Watford now assigns error to these two findings.

On appeal, "[t]he [C]ommission's determination of whether a claimant suffered 'an "injury by accident" presents a mixed question of law and fact.'"  *Riverside Reg'l Jail Auth. v. Dugger*, 68 Va. App. 32, 37 (2017) (quoting *Van Buren v. Augusta County*, 66 Va. App. 441, 446 (2016)).  "The 'Commission's findings of fact "are conclusive and binding on appeal" . . . provided that there is credible evidence to support those findings.'"  *Davis v. Wal-Mart Assocs.*, 80 Va. App. 526, 534-35 (2024) (alteration in original) (quoting *City of Charlottesville v. Sclafani*, 300 Va. 212, 222-23 (2021)).  "In determining whether credible evidence exists . . . '[the Court] does not retry the facts, reweigh . . . the evidence, or make its own determination of the credibility of the witnesses.'"  *Farmington Country Club, Inc. v. Marshall*, 47 Va. App. 15, 26-27 (2005) (third alteration in original) (quoting *Wagner Enters. v. Brooks*, 12 Va. App. 890, 894 (1991)).  However, "whether [the] facts prove the claimant suffered an 'injury by accident' is a question of law," which we review de novo.  *Goodyear Tire & Rubber Co. v. Harris*, 35 Va. App. 162, 168 (2001).

Likewise, the Court defers to the Commission's fact-finding on medical questions, including its choice "between conflicting expert medical opinions."  *Stancill v. Ford Motor Co.*,

---

[5] The deputy commissioner further supported his denial of Watford's claims under Code § 65.2-401 governing "ordinary diseases of life," which are "found widespread through the general population."  He found that Watford's claim for infectious pneumonia would have failed even under that unpled theory, which requires clear and convincing evidence that the disease arose "out of and in the course of employment, does not result from causes outside the employment, and" meets certain requirements connecting the disease to the employment.  Because Dr. Jones opined that Watford's asthma was "aggravated" by the incident, and therefore a pre-existing condition, the deputy commissioner held that her illness was not compensable as an ordinary disease of life.  Neither party appealed this finding to the Commission, and therefore it is final and binding.  *See Rich v. Facebook Inc.*, No. 1154-21-3, slip op. at 12, 2022 Va. App. LEXIS 146, at *16 (May 10, 2022) (Final decisions of a deputy commissioner or the Commission that are not appealed are binding on this Court.).

15 Va. App. 54, 58 (1992); *see also Can. Dry Potomac Corp. v. Anderson*, No. 0309-18-2, slip op. at 5, 2018 Va. App. LEXIS 264, at *7 (Oct. 9, 2018) ("[T]he Commission was entitled to give greater weight to [one] opinion than to [two others] . . . ."). Indeed, the Commission "is not required to accept" the opinion of a claimant's treating physician, *United Airlines, Inc. v. Hayes*, 58 Va. App. 220, 238 (2011) (quoting *Pilot Freight Carriers, Inc. v. Reeves*, 1 Va. App. 435, 439 (1986)); and, if such opinion "is in conflict with other medical evidence, the Commission is free to adopt that view 'which is most consistent with reason and justice,'" *Georgia-Pac. Corp. v. Robinson*, 32 Va. App. 1, 5 (2000) (quoting *C.D.S. Constr. Servs. v. Petrock*, 218 Va. 1064, 1070 (1978)). In short, this Court must affirm the Commission's factual findings on medical questions so long as they are supported by credible evidence. *See Georgia-Pac. Corp.*, 32 Va. App. at 5; *Hayes*, 58 Va. App. at 238.

That is the case here. The Commission had the authority to weigh the conflicting medical evidence before it and find Dr. Dietzler's opinion "most consistent with reason and justice." *Georgia-Pac. Corp.*, 32 Va. App. at 5 (quoting *Petrock*, 218 Va. at 1070). There is ample credible evidence in the record to support such a factual finding. For example, Watford's symptoms were described as "flu like," and included "fevers, chills, body aches, productive cough . . . sore throat, nausea, [and] vomiting." Dr. Dietzler noted that although symptoms of infectious origin and an inhalation injury may overlap, the latter tends to appear "more allergic in nature: such as runny nose, cough, sore throat, hoarseness, etc." Furthermore, Watford's symptoms began on a Thursday and worsened through the weekend into the following Monday when she began vomiting. By contrast, symptoms of an inhalation injury, especially nausea and vomiting, "generally start at the time of inhalation and often improve when the irritant is removed," and do not occur "days later." Indeed, based on these distinctions the Commission found "the persuasive medical evidence associate[d] [Watford's] symptoms with infectious

pneumonia rather than inflammatory pneumonitis as a result of her chemical exposure." Conversely, as the Commission noted, Dr. Jones submitted inconsistent opinions, stating both that Watford's diagnosis was causally connected to her "chemical exposure" at work and that he did not know whether the two were connected. The Commission was entitled to choose between these opinions, and, because its choice is firmly supported by the record, we affirm.

II. The Commission did not err by weighing the evidence before it.

Resisting the Commission's conclusion, Watford argues that the Commission erred by "disregarding" her testimony and that of Dr. Jones. On appeal, this Court does not review "the weight, preponderance of the evidence, or the credibility of witnesses." *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 87 (2019) (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)). It is the sole role of the Commission to make those determinations. *See Thompson v. Brenco*, 38 Va. App. 617, 624 (2002) ("[T]he [C]ommission was free to decide which evidence was more credible and should be weighed more heavily."). Our deference to the Commission's fact-finding ability is so strong that, even if conflicting evidence exists in the record, so long as "there was credible evidence . . . such that a reasonable mind *could* conclude that the fact in issue was proved" we must affirm. *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 84 (2005) (en banc) (quoting *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222 (1988)). Therefore, the only relevant inquiry on appeal is again whether "credible evidence" supported the Commission's findings. *Davis*, 80 Va. App. at 534-35.

As a preliminary matter, Watford argues that the Commission erred in disregarding the deputy commissioner's finding that her testimony was credible. There is no support in the record for such a contention. The Commission expressly refused to disturb the deputy commissioner's finding that Watford's testimony was credible. Watford argues that, despite this statement, the Commission "arbitrarily disregarded [her] consistent and credible testimony." In doing so, she

misunderstands the Commission's role as factfinder. Although the Commission must determine the credibility of witnesses, its inquiry does not end there; it must still weigh testimony, and in doing so may find it insufficient to support the claimant's case. *See Tharp v. City of Norfolk*, 19 Va. App. 653, 657 (1995) (holding the Commission did not "arbitrarily disregard" the deputy commissioner's finding on claimant's *credibility* simply because it gave his testimony little *weight*). The Commission here was therefore entitled to affirm the deputy commissioner's finding that Watford's testimony was credible, and nevertheless afford it little weight. *Id.* In doing so it did not arbitrarily disregard the deputy commissioner's finding.

Watford further contends that the Commission "disregarded" her own testimony and that of her primary physician. But "[t]his is simply another way of complaining about how the Commission weighed the conflicting evidence." *Pittsylvania Cnty. Bd. of Supervisors v. Hall*, No. 1869-17-3, slip op. at 8, 2018 Va. App. LEXIS 161, at *11 (June 12, 2018).[6] Here, rather than "disregard[ing]" Watford's testimony, the Commission did the opposite: it fully considered her testimony and determined that it should be accorded little weight. *Tharp*, 19 Va. App. at 657; *see also Thompson*, 38 Va. App. at 624.

Neither did the Commission arbitrarily disregard Dr. Jones's testimony. As discussed *supra*, the Commission was entitled to evaluate conflicting medical evidence and give Dr. Jones's testimony little weight in comparison to Dr. Dietzler's. *See Georgia-Pac. Corp.*, 32 Va. App. at 5. Moreover, as a general principle, the Commission "need not" accept internally contradictory evidence. Dr. Jones's opinions were inconsistent, which the Commission found "especially problematic," and it was well within its authority to afford it little weight. We accordingly affirm.

---

[6] While not binding, unpublished decisions may be cited as persuasive authority. *See* Rule 5A:1(f); *Smith v. Commonwealth*, 78 Va. App. 371, 383 n.4 (2023).

CONCLUSION

There is no basis to disturb the Commission's decision. The Commission did not err either in choosing between conflicting medical testimonies or weighing the evidence before it as its decision was supported by credible evidence. We therefore affirm.

*Affirmed.*